IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN SHEARS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 07-0491-WS-C |
| | ) |
| MOBILE COUNTY REVENUE | ) |
| COMMISSION, | ) |
| | ) |
|     Defendant. | ) |

ORDER

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 26). The Motion has been briefed and is ripe for disposition.[1]

I.    **Background Facts.**[2]

This Title VII retaliation action arises from plaintiff Susan Shears' employment relationship with defendant Mobile County Revenue Commission. Shears has worked for the Revenue Commission for approximately 17 years in the capacity of Reproduction Tech I.

---

[1]    Defendant elected not to file a reply brief within the designated time frame. (*See* docs. 29, 35.) As such, this Motion is taken under submission based on the principal briefs and exhibits filed by each side.

[2]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor. That said, plaintiff's brief repeatedly takes unwarranted liberties with the record by making factual characterizations that exaggerate the facts presented in the cited record excerpts. The Court's duty to consider the record in the light most favorable to the nonmovant does not encompass counsel's factual representations that are not supported in the record materials cited. *See, e.g., Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 40 (1st Cir. 1998) (despite generous Rule 56 standard, reviewing court need not "swallow plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited") (citation omitted); *Taylor v. Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence.").

(Shears Dep., at 23-24.)  In this position, Shears does "whatever is needed," including customer service and clerical functions; however, her primary job duty is to plat deeds, which consists of "tak[ing] a legal description and plat[ting] that particular information to whatever particular parcel [of real property] that person is trying to obtain."  (*Id.* at 24.)  Two other employees at the Revenue Commission hold the same job and perform the same duties that Shears does.  (*Id.* at 28.)

In 2005, Shears filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission.  (Shears Dep., at 28-29.)  In that Charge, she asserted that the Revenue Commission had discriminated against her on the basis of her race (African-American) by denying her a promotion to the position of Engineering Tech I.  (*Id.* at 29-30.)[3] After Shears filed this EEOC Charge, she and the Revenue Commission participated in a mediation session before the EEOC on or about November 16, 2005.  That mediation yielded a confidential settlement agreement that resolved Shears' EEOC Charge in its entirety.[4]  The terms of that agreement are largely immaterial to these proceedings; however, it is significant that (a) the Revenue Commission agreed to pay Shears' tuition for "basic mapping" training; and (b) both Shears and Revenue Commissioner Marilyn Wood executed the settlement agreement on November 16, 2005.  (Plaintiff's Exh. 18; Wood Dep., at 7.)

On November 17, 2005, the very next day after execution of the EEOC settlement agreement, Wood called Shears in to a meeting with Wood, Paul Gurganus (Shears' direct supervisor), and Wayne Turner (Gurganus's supervisor).  (Shears Dep., at 31-32, 35; Wood Dep., at 7-8.)  At that meeting, Wood told Shears that she "didn't have to file a lawsuit" and that

---

[3]     According to Shears, the job duties of an Engineering Tech I are similar to those of a Reproduction Tech I, except that Engineering Tech I employees also plat "splits," which occur when only a portion of a particular parcel of real property is sold.  (*Id.* at 30.)

[4]     Shears has sought to include a copy of this agreement in the summary judgment record by filing a pleading styled, "Motion to File Exhibit in Opposition Summary Judgment Underseal [*sic*]" (doc. 34).  Given the confidential and sensitive nature of the settlement agreement, the Motion to File Under Seal is **granted**.  The Clerk's Office is directed to **seal** Plaintiff's Exhibit 18 (doc. 34-2), with access limited to the parties and court personnel.

Shears "could have c[o]me to her" with her concerns.  (Shears Dep., at 32.)[5]  Shears perceived

Wood's statements in the presence of Shears' supervisors to be "very intimidating and

harassing," particularly given her understanding that there should be no discussion about the

EEOC Charge or related events following the successful mediation.  (*Id.* at 35.)  According to

Shears, the Revenue Commission managers at that meeting went over the additional training that

Shears was to receive as well as the chain of command she was to utilize if she had further

problems.  (*Id.* at 36.)  Shears' testimony is that she was "reprimanded" at that meeting and that

Gurganus indicated that he "had to keep tabs on" her because she had filed an EEOC Charge.

(*Id.* at 70-71.)  Shears further testified that she felt that she was being punished at the meeting for

having filed an EEOC Charge, that she felt humiliated, and that she was reduced to tears.  (*Id.* at

66-67.)  In a subsequent letter to Wood, Shears characterized the meeting as making her "feel

embarrassed and ashamed that [she] had exercised [her] right to file an EEOC charge."

(Plaintiff's Exh. 3.)[6]  In that same letter, Shears wrote that she had been "lectured concerning

factual matters which were disputed during the EEOC Mediation."  (*Id.*)[7]

---

[5]      Defendant's witnesses dispute Shears' account of the November 17 meeting in several respects; however, for Rule 56 purposes, plaintiff's version of the facts is accepted as true and all reasonable inferences from the record are drawn in her favor.  In any event, Shears's supervisor, Gurganus, allowed that Shears "may have been told ... that problems could be worked out if she would bring them to ... our attention, instead of just filing an EEOC charge." (Gurganus Dep., at 13.)

[6]      This Exhibit (like many others submitted by plaintiff) does not appear to have been properly authenticated in plaintiff's summary judgment submission.  Notwithstanding this omission, it appearing that these exhibits can be reduced to admissible form at trial, they will be considered on summary judgment.  *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp.2d 1322, 1327 n. 2 (S.D. Ala. 2003) ("Documents must generally be properly authenticated to be considered at summary judgment, unless it is apparent that those documents can be reduced to admissible, authenticated form at trial.").

[7]      For its part, the Revenue Commission maintains that the purpose of the November 17 meeting was to implement the EEOC settlement by informing Shears that defendant was ready and willing to assist her in obtaining the training that would enable her to be considered for promotion.  (Plaintiff's Exh. 16; Wood Dep., at 8-9.)  As Wood put it, "We just told her this was the plan that was based on the EEO agreement."  (Wood Dep., at 12.)  Of course, for

According to Shears, in the wake of that November 17 meeting, she "was criticized and called in meetings all the time" in a manner that "was just awful." (Shears Dep., at 38.) Shears characterizes the criticism as "just a lot of nitpicking stuff ... just making life unbearable." (*Id.* at 39.) When Shears made errors, those errors were brought to her supervisor, Gurganus, rather than bringing them to her to be corrected. (*Id.* at 38, 46.) By contrast, when other employees in the mapping department made errors, those errors were taken to the employees directly to be corrected. (*Id.* at 46-47; Kinman Dep., at 10; Vickers Dep., at 8-10.) Thus, Shears felt that, following the EEOC proceeding, she was treated less favorably than her co-workers. (Shears Dep., at 68.) Shears' evidence is that she had never been scrutinized this heavily by the Revenue Commission before, and that other employees were not receiving this degree of scrutiny. (Plaintiff's Exh. 3.) As an example of this unfavorable treatment, Shears complains that "they were watching me when I went on break and when I came back from break." (Shears Dep., at 40.) Wood acknowledges that Gurganus met with Shears eight different times to discuss her performance between mid-November 2005 and mid-March 2006;[8] however, she attributes the admittedly "high" frequency of such meetings to a sudden increase in Shears' error rate in platting deeds and performing mapping functions. (Plaintiff's Exh. 16.) Defendant had never documented problems with Shears' error rate prior to her EEOC Charge. (Wood Dep., at 40-41.) Likewise, defendant was unable to point to any documentation concerning errors made by plaintiff's co-workers, Geneva Kinman and Nina Vickers, even though both of them admittedly did make platting errors from time to time. (*Id.* at 47.)

Shears was summoned to another meeting with Wood, Turner and Gurganus on February 15, 2006. Although the purpose of the meeting is disputed (plaintiff says it was to reprimand her, defendant says it was to examine the status of her training pursuant to the EEOC settlement), it is undisputed that the meeting did not go smoothly. Shears maintains that she was criticized for a lack of initiative in seeking out training opportunities. (Plaintiff's Exh. 8.) Wood

---

summary judgment purposes, plaintiff's account of the November 17 meeting is credited and defendant's conflicting version is not.

[8]     Gurganus sets the figure even higher, testifying that he had 27 or more meetings with Shears concerning errors in 2005-2006. (Gurganus Dep., at 30.)

maintains that Shears "was argumentative and disrespectful" and "belligerent," and documented such conduct with a memorandum to Shears' personnel file.  (Wood Dep., at 17-22; Plaintiff's Exh. 5.)  That memorandum, which was signed by Wood, Gurganus, and Turner, specifically noted Shears' belligerence and disrespectfulness, and further stated that she had failed to show initiative to obtain the training that might render her eligible for promotion.  (Plaintiff's Exh. 5.) Documentation was also placed in Shears' file concerning other workplace incidents, including at least one occasion that Gurganus conceded was "very petty," based on Shears' failure to attend a "birthday breakfast" in the office because she was on the phone with a taxpayer. (Gurganus Dep., at 39, 41.)  There is no indication that other Revenue Commission employees were written up for similarly "petty" episodes.

The Revenue Commission assigns service ratings to its employees on an annual basis to measure job performance and establish "if the person is actually doing their job."  (Turner Dep., at 11-12.)  Service ratings may affect an employee's ability to secure a promotion, and the difference between a "satisfactory" employee and a "high quality" employee would be considered in determining which of them was promoted.  (*Id.* at 15-17.)  Before filing her EEOC Charge, Shears' service rating had consistently been "high quality" for several years.  (Gurganus Dep., at 25.)  In June 2006, however, the Revenue Commission lowered Shears' service rating to "satisfactory."  (Shears Dep., at 43; Plaintiff's Exh. 2.)[9]  Defense witnesses offered differing takes on the reasons for that modification.  Wood justified this downgrade primarily by reference to "the attitude that she has and the initiative that [defendant] opened the door for her and she didn't take," but also mentioned an increase in Shears' error rate during the evaluation period. (Wood Dep., at 31, 36-37.)  By contrast, Gurganus cited only the error rate issue as the reason for the "satisfactory" rating.  (Gurganus Dep., at 17.)[10]  Although Shears' salary and benefits

_____

[9]       The service rating system applicable to Revenue Commission employees provides four gradations of performance which are, in descending order, as follows: exceptional, high quality, satisfactory, and unsatisfactory.  (Plaintiff's Exh. 2.)  Thus, the June 2006 downgrade of Shears' service rating from "high quality" to "satisfactory" lowered her from the second highest to the third highest of the four rating categories.

[10]       This is so even though plaintiff's co-workers, Geneva Kinman and Nina Vickers, both testified that they were unaware whether platting errors were even considered in service

were not reduced, the lowering of her service rating would reasonably be expected to diminish her opportunities for promotion at the Revenue Commission or for transfer to other departments within the Mobile County system, albeit without categorically disqualifying her from all promotions.  (Shears Dep., at 44-45, 69; Wood Dep., at 56-57, 60-61.)  Upon learning of the service rating downgrade, Shears protested to the Revenue Commission that this change was retaliatory for her EEOC Charge and initiated formal grievance procedures.  (Plaintiff's Exhs. 13 - 15.)

Shears remains employed at the Revenue Commission today.  However, her supervisor's supervisor, Wayne Turner, testified that Shears' future with that organization looks "not good ... [b]ecause of her attitude."  (Turner Dep., at 56.)  That said, so long as she continues to perform her job at a satisfactory level or better, Turner indicated that Shears' job at the Revenue Commission will remain available to her.  (*Id.* at 82.)  Wood's position is that she would not want to recommend Shears for another job because of her "attitude" and "not showing the initiative to learn new aspects of the job."  (Wood Dep., at 51.)  However, between the time that Wood became Revenue Commissioner in December 2001 and the November 2005 EEOC mediation, Wood documented no problems with Shears' attitude or lack of initiative.  (*Id.* at 53-54.)  Only after the EEOC mediation did this documentation and criticism commence.

Ultimately, Shears filed a new EEOC Charge alleging retaliation on or about September 22, 2006.  (Defendant's Exh. O.)  That retaliation charge culminated in this lawsuit, wherein Shears alleges that the Revenue Commission violated Title VII by retaliating against her for engaging in the protected activity of filing an EEOC Charge in 2005 relating to her non-selection for the Engineering Tech I job.  The Revenue Commission now moves for summary judgment on this retaliation action.

## II.   Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The

---

rating determinations.  (Kinman Dep., at 8; Vickers Dep., at 9.)  However, defendant's evidence is that Shears made 27 documented errors in the 2005-2006 period, while Kinman and Vickers made just 5 or 6 each.  (Gurganus Dep., at 18-21.)

party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  *Id.* at 1086 (citation omitted).

### III.   Analysis.

Title VII bars an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("Retaliation is a separate violation of Title VII.").[11]  In the absence of direct evidence, Title VII retaliation claims turn on the familiar *McDonnell Douglas*

---

[11]     *See also Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed").

burden-shifting analysis applicable to other Title VII claims.  The plaintiff first must establish a *prima facie* showing of retaliation, after which "the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. ... The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *see also McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (explaining burden-shifting framework in the retaliation context).

> ### A.   *Shears Has Established a* **Prima Facie** *Case of Retaliation.*

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *see also Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.") (citing *Goldsmith*, 513 F.3d at 1277); *McCann*, 526 F.3d at 1375.[12] The Revenue Commission prudently concedes that Shears can satisfy the first and third elements.  In particular, defendant acknowledges that Shears engaged in statutorily protected activity in the 2005 EEOC proceedings, and that the close temporal proximity between the time of the protected activity and the allegedly adverse actions is sufficient to establish a causal connection. (Defendant's Brief (doc. 28), at 10, 21.)[13]  Nonetheless, the Revenue Commission

---

[12]   Rowell's burden of establishing a *prima facie* case is not heavy.  *See Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

[13]   On the latter point, Eleventh Circuit precedent provides that "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  The record taken in the light most favorable to Shears reflects that the Revenue Commission subjected her to a campaign of harassment and intimidation beginning the day after the successful mediation of her 2005 EEOC Charge.  As such, the "close temporal

insists that Shears' *prima facie* case of retaliation fails because she has not shown that she suffered an adverse employment action.  The Court disagrees.

In 2006, the Supreme Court decided *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), which unveiled an expansive adverse action standard under which a Title VII retaliation plaintiff need show only that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  126 S.Ct. at 2415.  Four months ago, the Eleventh Circuit had occasion to examine and apply *Burlington* in *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008).  The *Crawford* panel deemed the *Burlington* standard to be "decidedly more relaxed" and a "more liberal view" of the adverse action needed to sustain a Title VII retaliation cause of action than that adopted by this Circuit previously.  *Id.* at 973-74.  In that regard, the appellate court explained that, "[u]nder the holding of *Burlington*, the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related."  *Id.* at 973.  In the post-*Burlington* world, *Crawford* explained, a retaliation plaintiff is no longer required to show "either an ultimate employment decision or substantial employment action to establish an adverse employment action for the purpose of a Title VII retaliation claim."  *Id.* at 974.  Significantly, the *Crawford* panel construed *Burlington* as "strongly suggest[ing] that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered materially adverse to him and thus constitute adverse employment actions."  *Id.* at 974 n.14.  The *Burlington* standard and its application in *Crawford* bodes ill for employers such as the Revenue Commission seeking summary judgment based on the "adverse employment action" prong of the *prima facie* test in Title VII retaliation cases.

Notwithstanding the extremely permissive test ushered in by *Burlington*, the Revenue Commission urges the Court to find that Shears has flunked this aspect of her *prima facie* burden.  Taken in the light most favorable to the nonmovant, the record reflects that in the wake

_____

proximity" threshold is plainly satisfied for purposes of plaintiff's *prima facie* case of retaliation.

of her protected activity, the following purportedly retaliatory acts occurred: (a) Shears was called into meetings with upper management, rebuked for filing an EEOC Charge instead of following the chain of command, and told that she was expected to give 100% to her job; (b) Shears' work was subjected to much more intense scrutiny than it ever had been previously in her 14 years of employment at the Revenue Commission, with her supervisor admittedly "keeping tabs on her" following the EEOC mediation; (c) her work was constantly criticized in a manner that it never had been previously and to a much greater degree than that of her colleagues; (d) the Revenue Commission began documenting her personnel file extensively, including write-ups of incidents that her direct supervisor acknowledged were "very petty"; and (e) her service rating was lowered from "high quality" to "satisfactory," which could reasonably be expected to curtail her opportunities for promotion or transfer.  Under *Burlington* and *Crawford*, the Court readily finds that a jury could properly determine that a reasonable employee would have found these alleged acts, taken in the aggregate, to be materially adverse, such that a reasonable employee well might have been dissuaded by those acts from making or supporting a charge of discrimination against the employer.  Therefore, Shears has made the requisite *prima facie* showing of an adverse employment action.  The Revenue Commission's arguments to the contrary are without merit.[14]

_____

[14]     To expose the infirmity of defendant's position, one need look no further than the reduction in Shears' service rating.  *Crawford* itself involved a fact pattern in which the plaintiff received an unfavorable performance review that affected her eligibility for a merit pay increase after complaining of race discrimination.  The *Crawford* panel emphatically determined that there was "no doubt but that Crawford suffered a materially adverse action" in this respect.  529 F.3d at 975.  After all, the appellate court reasoned, "[s]uch conduct by an employer clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one."  *Id.*  The same is true here.  The record reflects that Shears desperately wanted a promotion.  By lowering her service rating to "satisfactory," the Revenue Commission substantially impaired her chances of receiving such a promotion.  A reasonable employee might be deterred from pursuing or making a charge of discrimination based on that conduct by an employer; therefore, even if all of the other alleged retaliatory acts are discounted, the reduction in service rating by itself would be sufficient to satisfy the *Burlington* standard, as construed by the Eleventh Circuit in *Crawford*.  The Revenue Commission's reliance on pre-*Burlington* case law for the proposition that a negative job evaluation does not satisfy the adverse employment action requirement in the absence of a loss of pay or benefits is misguided, inasmuch as *Burlington* jettisoned the legal premise on which each of those decisions was predicated.  *See*

**B.     *Genuine Issues of Fact Remain on the Question of Pretext.***

Shears having made a *prima facie* showing of retaliation under Title VII, the burden of production shifts to the Revenue Commission to articulate legitimate nonretaliatory reasons for the challenged actions.  Defendant maintains that none of its conduct about which Shears is complaining was retaliatory.  With respect to the November 17, 2005 meeting, defendant's evidence is that this meeting was convened to implement the terms of the EEOC settlement, not to criticize, reprimand or intimidate Shears.  As for the increased scrutiny of her job performance and frequent meetings concerning errors, the Revenue Commission's evidence reflects that Shears was treated no differently than other employees and that the frequency of meetings was high for Shears because there was a considerable increase in her mapping error rate, which defendant attributes to Shears attempting to do more difficult work that she did not know how to do.  Defendant explains the "satisfactory" service rating in June 2006 by pointing to Shears' error rate and her failure to get along with others.  The Revenue Commission's explanations and supporting evidence suffice to satisfy its modest burden of production, and plaintiff does not suggest otherwise.  *See Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769-70 (11th Cir. 2005) (employer's burden is exceedingly light, and is satisfied as long as employer articulates clear and reasonably specific non-discriminatory basis for its actions).

Defendant having articulated legitimate nonretaliatory reasons for the conduct at issue, the *McDonnell Douglas* analysis hinges on plaintiff's ability to make a sufficient showing of pretext to reach a jury.  *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason for [the adverse employment action] was pretexual.").  To create a genuine issue of material fact on the question of pretext, Shears must "demonstrate that the proffered reason was not the true reason for the employment decision."  *Jackson v. State of Alabama State Tenure*

---

*Crawford*, 529 F.3d at 973-74 ("the *Burlington* Court effectively rejected the standards applied by this court ... that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for the purpose of a Title VII retaliation claim").  "The two standards are distinct and different and, as noted, the *Burlington* standard applies to a wider range of employer conduct."  *Id.* at 974 n.14.

*Com'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("To show pretext, a plaintiff must come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.") (internal quotations and citations omitted). She may do that "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson*, 405 F.3d at 1289; *see also Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). Shears argues in her summary judgment brief that the Revenue Commission's stated reasons for the adverse actions are not believable; therefore, in order for her retaliation claim to withstand summary judgment, her evidence "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (citations omitted).

Plaintiff identifies numerous disputed facts in the evidence that tend to undermine and cast doubt on defendant's stated reasons for the challenged conduct. With respect to the November 2005 meeting, if Shears' account is believed and defendant's representatives berated her for filing an EEOC Charge, instructed her to utilize the chain of command rather than filing lawsuits, and admonished her that she was expected to give 100% on the job, a reasonable jury could conclude that defendant's stated justification for the meeting as being to implement the EEOC settlement was not credible. As for the increase in job scrutiny, if plaintiff's evidence is believed there was no dramatic increase in the number of mapping errors she was making and she was performing normal work (not more difficult work), suggesting that defendant's stated reason for its dozens of performance-related meetings with her in the months following the EEOC mediation were not undertaken because of deteriorating performance, but instead in retaliation for her EEOC proceedings. It is a jury question as to whether Shears was treated differently than her peers (Kinman and Vickers) because her mapping errors were far more extensive, or whether there really was no significant difference in performance between them and Shears was treated differently simply because of her EEOC Charge. A jury could

reasonably find that the "satisfactory" service rating was retaliatory given inconsistencies among defendant's witnesses as to the reasons for that rating (which Gurganus attributed solely to mapping errors, while Wood touted both errors and attitude) and given the conflicting evidence as to whether plaintiff's error rate had in fact increased.

Perhaps there is an effective rebuttal to plaintiff's pretext arguments. But defendant did not address the pretext prong of the *McDonnell Douglas* test in its summary judgment brief. Defendant has not argued that Shears failed to proffer sufficient evidence to create a genuine issue of material fact regarding whether the Revenue Commission's articulated reasons are pretextual. This Court will not undertake to formulate defendant's summary judgment arguments for it.[15] Accordingly, given that Shears has marshaled evidence and argument making a colorable showing of pretext, and given defendant's failure to counter that showing with any evidence or argument of its own, the Court finds that plaintiff is entitled to a jury trial on her claims that she was subjected to retaliation in violation of Title VII for having engaged in the protected activities of filing an EEOC Charge alleging racially discriminatory promotion practices at the Revenue Commission, and participating in an EEOC mediation session relating to that charge.

**IV.     Conclusion.**

For all of the foregoing reasons, and especially the abundance of genuinely disputed material facts, defendant's Motion for Summary Judgment (doc. 26) is **denied**. Additionally, Plaintiff's Motion to File Exhibit Under Seal (doc. 34) is **granted**, and the Clerk of Court is directed to **seal** Plaintiff's Exhibit 18 (doc. 34-2), with access limited to parties and court

---

[15]     *See Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments ....") (citation omitted); *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her"); *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 299 n.57 (S.D. Ala. 2006) (where party has not articulated a theory for liability, "the Court will not formulate their arguments for them"); *Stone v. Allen*, 2007 WL 4209262, *1 (S.D. Ala. Nov. 27, 2007) ("Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file.").

personnel.

This action remains set for Final Pretrial Conference before the undersigned on **October 7, 2008** at **9:30 a.m.**, with jury selection to follow on **October 28, 2008**.

DONE and ORDERED this 3rd day of October, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE